UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELECTION INTEGRITY FUND AND
ONE NATION MICHIGAN,

    Plaintiffs,

v

GRETCHEN WHITMER, in her official
capacity as GOVERNOR OF THE
STATE OF MICHIGAN,

    Defendant.

Case No. 1:20-cv-00805

HON. PAUL J. MALONEY

MAG. PHILLIP J. GREEN

**ORAL ARGUMENT REQUESTED**

---

Edward D. Greim
Graves Garrett, LLC
Special Counsel, Thomas More Society
Missouri Bar No. 54034
Attorney for Plaintiff
1100 Main Street, Suite 2700
Kansas City, MO  64105
(816) 256-3181
edgreim@gravesgarrett.com

Neil Giovanatti (P82305)
Samantha Reasner (P81148)
Michigan Dep't of Attorney General
Assistant Attorneys General
Attorneys for Defendant
P.O. Box 30758
Lansing, MI 48909
(517) 335-7603
GiovanattiN@michigan.gov
ReasnerS@michigan.gov

---

**DEFENDANT'S SUPPLEMENTAL BRIEF IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

## INTRODUCTION

On September 25, 2020, Governor Whitmer issued Executive Order (E.O.) 2020-183, which, among other changes, updated the crowd-size limitations for social gatherings and organized events in nonresidential settings. Under the new order, like any building or fire code, social gatherings and organized events in nonresidential settings are limited based on the size of the venue. For example, in the majority of the State, indoor events in a nonresidential venue are permitted up to (1) 20% of seating capacity for venues with fixed seating, or (2) 20 people per 1,000 square feet for venues that do not have fixed seating. (E.O. 2020-183(6)(b).) The order also includes a 500-person limit on the maximum number of people who may gather in the largest indoor venues to prevent super-spreader events. (*Id.*)

As requested by the Court in its September 28, 2020 Order to Respond (ECF No. 15, PageID.577), this brief addresses how E.O. 2020-183 affects Plaintiffs' pending motion for a preliminary injunction. The Court noted that, in their motion, Plaintiffs referred to "particular gatherings they have scheduled." (*Id.*) The only forthcoming events alleged in the Complaint are (1) an indoor event hosted by Plaintiff One Nation on Friday, October 2nd in Lansing, and (2) Plaintiff Election Integrity Fund's (EIF) "indoor meeting event in Rochester Hills" on October 27th. (Compl. ¶¶ 44, 46, PageID.11-12.) As E.O. 2020-183 is effective on October 9, 2020,

1

for purposes of this brief, the only relevant event at issue is EIF's October 27th event.  (E.O. 2020-183(16).)[1]

While the bulk of Defendant's legal arguments remain the same (i.e., *Jacobson* deference still applies, Plaintiffs' First Amendment claims still fail, and Plaintiffs still lack standing to contest the outdoor event limitations), as of its effective date on October 9, E.O. 2020-183 moots Plaintiffs' motion as they presented no evidence that their forthcoming planned events would not be permitted under E.O. 2020-183.  In fact, Plaintiffs provide no information whatsoever about the size of the venues for their forthcoming indoor events.  Thus, Plaintiffs cannot demonstrate any injury and lack standing to contest the crowd-size limitations in E.O. 2020-183.  They cannot demonstrate any cognizable claim or any irreparable harm, and the equities do not support a preliminary injunction.  Plaintiffs' motion should be denied.

## ARGUMENT

### I.   Plaintiffs' claims are not likely to succeed on the merits.

As described in Defendant's original opposition brief, Plaintiffs fail to state a viable claim for relief.  In addition to Defendant's original arguments, Plaintiffs also lack standing to challenge E.O. 2020-183 as they failed to show that any of their planned events would be impacted by that E.O.'s crowd-size limitations.

---

[1] E.O. 2020-176 remains applicable to Plaintiff One Nation's October 2nd event. Thus, for One Nation's October 2nd event, Defendant relies on the arguments set forth in her original briefing.  (*See* ECF No. 10, PageID.293-339.)

2

### A. Plaintiffs lack standing to contest E.O. 2020-183.

Plaintiffs "must demonstrate standing for each claim [they] seek[] to press and for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (internal quotations omitted). To demonstrate standing, Plaintiffs must allege a "concrete and particularized" injury that is traceable to the challenged action. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).

As referenced above, the only remaining events that either Plaintiff has allegedly scheduled are (1) an indoor event hosted by Plaintiff One Nation on Friday, October 2nd in Lansing, and (2) an indoor event in Rochester Hills hosted by Plaintiff EIF on October 27th. (Compl. ¶¶ 44, 46, PageID.11-12.) E.O. 2020-183 is effective on October 9, 2020. (E.O. 2020-183(16).)

Plaintiff One Nation pleaded no allegations, and submitted no evidence, of plans to host an event after October 9, 2020. Accordingly, Plaintiff One Nation has no standing to contest E.O. 2020-183 as the order will not affect any of its alleged events.

Plaintiff EIF alleges that its October 27th indoor event in Rochester Hills will have approximately 200-250 attendees. (Compl. ¶ 44(d), PageID.11.) There are no allegations or evidence regarding the venue or its size for the October 27th meeting.[2]

---

[2] Plaintiff EIF's website also contains no information about the alleged October 27th event. See https://electionintegrityfund.org/. In fact, the website does not even mention that the organization has ever hosted or will ever host events or meetings.

3

Under E.O. 2020-183, the October 27th event may proceed indoors as alleged if the venue is large enough. Since Rochester Hills is in Region 1, indoor events are limited to 20% of seating capacity for venues with fixed seating or 20 people per 1,000 square feet for venues without fixed seating. (E.O. 2020-183(6)(b)(1)-(2), (12)(a).) Thus, if 250 people will attend the October 27th event, then the venue either must have at least 1,250 fixed seats or, if the venue does not have fixed seating, must be at least 12,500 square feet.

As E.O. 2020-183 will allow the October 27th meeting to proceed as alleged if Plaintiff EIF uses a large enough venue, Plaintiff EIF cannot demonstrate any injury due to the limitations contained in E.O. 2020-183.

Moreover, as previously briefed, Plaintiffs continue to lack standing to contest the crowd-size limitations for outdoor events. E.O. 2020-183 provides even greater ability to host outdoor events than its predecessors, allowing events over 100 people at 30% of seating for fixed seating venues or 30 people per 1,000 square feet for venues without fixed seating. (E.O. 2020-183(d).) Plaintiffs provided no evidence or allegations of any planned outdoor events, let alone any outdoor events that would exceed these reasonable limitations. Accordingly, Plaintiffs lack standing to contest E.O. 2020-183, and their motion should be denied.

> **B.** **The crowd-size limitation for indoor events is entitled to deference under *Jacobson v. Massachusetts*.**

As described in Defendant's original opposition brief, *Jacobson v. Massachusetts*, 197 U.S. 11, 29 (1905)—and the recent jurisprudence applying it in

4

the context of the COVID-19 pandemic—requires deference to the State's efforts to manage this pandemic unless they have "no real or substantial relation" to protecting public health and safety, or they are "beyond all question, a plain palpable invasion of rights secured by the fundamental law." *Jacobson*, 197 U.S. at 31.  Neither situation is presented here.  The crowd-size limitations in E.O. 2020-183, like their predecessors, are directly related to public health and to mitigating the spread of this deadly virus.  And Plaintiffs cannot demonstrate a fundamental right to gather in numbers beyond the reasonable (and significant) crowd-size allowances contained in E.O. 2020-183, particularly when there are so many alternative avenues to hold their meetings.

The crowd-size limitations in E.O. 2020-183 are reasonable, promote public health and safety in the face of a pandemic, and do not, "beyond all question," "plain[ly]" and "palpabl[y]" invade any fundamental constitutional rights.  *Id.*  Accordingly, for the same reasons *Jacobson* deference applies to E.O. 2020-176 and the previous executive orders, such deference applies to E.O. 2020-183.

      **C.**    **Even if *Jacobson* does not apply, Plaintiffs fail to show a likelihood of success on their First Amendment claims.**

          **1.**    **The crowd-size limitation is not a prior restraint.**

Just as E.O. 2020-176 did not create a prior restraint, E.O. 2020-183 also does not create a prior restraint.  The crowd-size limitations in E.O. 2020-183 do not regulate the expressive element of Plaintiffs' speech, and the misdemeanor penalty

contained in the executive orders is a subsequent punishment. Plaintiffs' prior restraint claim accordingly fails as to all the relevant executive orders.

### 2. The crowd-size limitation is a content-neutral time, place, and manner restriction.

The crowd-size limitations in E.O. 2020-183—like those in E.O. 2020-160 and E.O. 2020-176—are content-neutral public-health restrictions that regulate conduct, not speech. E.O. 2020-183 provides more flexibility for the meetings and gatherings to occur, significantly increasing the crowd-size caps for events and gatherings and allowing for larger events and gatherings to be held at larger venues. Just as a building or fire code may restrict how many people may be in a room based on its size for safety purposes, E.O. 2020-183 regulates how many people may be present in a venue based on its size for public health and safety purposes. As a content-neutral and generally applicable regulation, E.O. 2020-183's crowd-size limitations would be subject, at most, to intermediate scrutiny (to the extent any First Amendment scrutiny is applicable to them here, which it is not due to the standing issues discussed above).

For the same reasons that E.O. 2020-176 and E.O. 2020-160 meet intermediate scrutiny, E.O. 2020-183 also meets intermediate scrutiny. Indeed, with its transition to limitations based on the venue's size, through seating capacity and square footage-based limitations, E.O. 2020-183 is tailored at least as well as its predecessors to reducing the spread of the disease. A larger venue permits greater social distancing. Thus, coupled with social distancing and mask-wearing

requirements in order, E.O. 2020-183 continues the "careful approach to reopening," keeping the crowd-size limitations well aligned to the ever-changing demands presented by this crisis. (E.O. 2020-183, Preamble, p 1.) Moreover, while Plaintiffs' attempt to impugn the prior crowd-size limitations by comparing them to the capacity limitations for casinos, restaurants, and bars was meritless in its own right, that argument carries even less weight with E.O. 2020-183's incorporation of similar capacity-based considerations into its crowd-size limitations. (*See* Pls.' Memo. at 21, PageID.96; Pls.' Reply at 5, PageID.544.) Put simply, E.O. 2020-183 is narrowly tailored to serve a significant government interest in protecting public health in the midst of the global pandemic.

Relatedly, E.O. 2020-183 only increases the alternative channels of communication available. In addition to events and gatherings permitted under the prior orders, E.O. 2020-183 allows for indoor events and gatherings of up to 500 people and outdoor events and gatherings of up to 1,000 people, depending on the size of the venue. (E.O. 2020-183(6)(b)-(c).) And like under E.O. 2020-160 and E.O. 2020-176, Plaintiffs may still hold virtual events or multiple smaller events if they so choose. Ample alternative channels exist for Plaintiffs to spread their messages.

Accordingly, the crowd-size limitation for indoor events in E.O. 2020-183 meets intermediate scrutiny, and Plaintiffs cannot show a likelihood of success on the merits of their First Amendment claims.

### 3. The limitation on indoor events and gatherings is not unconstitutionally overbroad.

Defendant adopts the arguments regarding overbreadth from her original opposition brief as they apply equally to E.O. 2020-183. Like for the previous executive orders, Plaintiffs cannot meet their heavy burden of demonstrating that the crowd-size limitations in E.O. 2020-183 are substantially overbroad. As described above, E.O. 2020-183 provides even greater flexibility for holding in-person events and gatherings of various sizes, while also accounting for public health and safety considerations. There is simply no evidence or allegations to support that the crowd-size limitations are constitutionally overbroad.

### 4. The separation of powers provision does not render the crowd-size limitation unconstitutionally vague.

Similar to the overbreadth argument, the void for vagueness discussion in Defendant's original opposition brief applies equally in support of E.O. 2020-183. E.O. 2020-183 contains the same separation of powers provision as the previous executive orders. (*See* E.O. 2020-183(13).) And like in the previous orders, this provision does not create an exception to the crowd-size limitation, nor does it generate confusion for the public or law enforcement.

Plaintiffs' void for vagueness claim fails as it relates to E.O. 2020-183.

## II. Plaintiffs make an inadequate showing of irreparable harm.

Plaintiffs submitted no evidence and pleaded no allegations that could support a finding of irreparable harm as a result of E.O. 2020-183. As discussed above, *supra* Point I, Plaintiffs cannot demonstrate any injury as a result of E.O.

8

2020-183. The remaining meetings planned by Plaintiffs, as alleged in the Complaint, could proceed under E.O. 2020-183 assuming Plaintiffs have a large enough venue. And there is no evidence that Plaintiffs did not or cannot secure such a venue, or that they cannot otherwise hold their events in a manner consistent with the applicable limitations.

For these reasons, in addition to those previously briefed, Plaintiffs cannot demonstrate irreparable harm from E.O. 2020-183's (or its predecessors') crowd-size limitations, and their motion for a preliminary injunction must fail.

### III. The remaining factors weigh in favor of the Governor.

E.O. 2020-183 further strengthens the Governor's equity arguments. Her incremental and methodical reduction of COVID-related restrictions is designed to further the public health and safety of all in Michigan. As described in the preamble of E.O. 2020-183, this "careful approach to reopening in this emergency situation is working," but with "flareups continu[ing]" and the virus still poised for resurgence, "ongoing vigilance" remains crucial. (E.O. 2020-183, Preamble, p. 1.) The public interest in continuing this cautious, but productive and promising, path toward normalcy cannot be overstated. Issuing an injunction at this juncture would critically undermine the integrity and effectiveness of this carefully crafted plan, harming Michiganders and providing no public benefit whatsoever.

9

## CONCLUSION AND RELIEF REQUESTED

For these reasons, E.O. 2020-183 strengthens Governor Whitmer's opposition to Plaintiffs' motion for preliminary injunction and the Governor's pending motion to dismiss.  Defendant Governor Whitmer respectfully requests that the Court deny Plaintiffs' motion for a preliminary injunction and grant her such further relief as the Court deems just and appropriate.

Respectfully submitted,

/s/ Neil Giovanatti
Neil Giovanatti (P82305)
Samantha Reasner (P81148)
Michigan Dep't of Attorney General
Assistant Attorneys General
Attorneys for Defendant
P.O. Box 30758
Lansing, MI 48909
(517) 335-7603
GiovanattiN@michigan.gov
ReasnerS@michigan.gov

Dated:  October 1, 2020

## CERTIFICATE OF COMPLIANCE WITH LOCAL CIVIL RULE 7.2(b)(i)

I certify that the above brief is 2,178 words in length including all headings, footnotes, citations, and quotations.  This brief was created using Microsoft Word.

*/s/ Neil Giovanatti*
Neil Giovanatti (P82305)
Assistant Attorney General
Attorney for Defendant

## CERTIFICATE OF SERVICE

    I certify that on October 1, 2020, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system, which will provide electronic copies to counsel of record, and I certify that my secretary has mailed by U.S. Postal Service the papers to any non-ECF participant.

                                       /s/ *Neil Giovanatti*
                                       Neil Giovanatti
                                       Assistant Attorney General
                                       Attorney for Defendant