# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ELECTION INTEGRITY FUND, *et al.*, | ) |
| | ) Case No. 1:20-cv-00805 |
| Plaintiffs, | ) |
| | ) Hon. Paul J. Maloney |
| v. | ) Mag. Phillip J. Green |
| | ) |
| GRETCHEN WHITMER, in her official | ) **ORAL ARGUMENT** |
| capacity as Governor of Michigan, | ) **REQUESTED** |
| | ) |
| Defendant. | ) |

## PLAINTIFFS' SUPPLEMENTAL BRIEF IN RESPONSE TO COURT'S 9/28/20 ORDER TO RESPOND

**GRAVES GARRETT, LLC**

*/s/ Edward D. Greim*
Edward D. Greim
Special Counsel, Thomas More Society
Missouri Bar No. 54034
GRAVES GARRETT, LLC
1100 Main Street, Suite 2700
Kansas City, Missouri 64105
Tel.: (816) 256-3181
Fax: (816) 222-0534
edgreim@gravesgarrett.com

*Attorney for Plaintiffs*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ ii

QUESTION PRESENTED ............................................................................................... 1

BRIEF ANSWER .............................................................................................................. 1

INTRODUCTION ............................................................................................................. 2

ANALYSIS ........................................................................................................................ 4

    I.    Plaintiffs plan to hold additional events that were not included in their letters from over a month ago, including an election challenger training event on October 8, 2020, which remains prohibited by the Governor's prior order. ............................................................................................ 4

    II.    Plaintiffs' claims are not rendered moot by the Governor temporarily changing the restrictions on social gatherings and planned events. ............ 5

        (a)    The Governor has claimed the authority to promulgate and enforce rules which prohibit some events based on the content of the expressive conduct involved under a statute which enables her to impose, rescind, and changer her orders at any time. ........ 5

        (b)    The Court should still consider Plaintiffs' claims because they are capable of repetition, yet would evade review due to the Governor's ability to alter her Orders just days before they face review by this Court. ............................................................. 6

        (c)    The Governor's voluntary and temporary alteration of the in-person restrictions does not render Plaintiffs' claims moot or preclude the Court from adjudicating those claims. ................... 9

CONCLUSION ................................................................................................................ 11

CERTIFICATE OF COMPLIANCE .............................................................................. 13

CERTIFICATE OF SERVICE ........................................................................................ 14

i

# **TABLE OF AUTHORITIES**

**Cases**

*Acosta v. Wolf*,
  No. CV 20-2528, 2020 WL 3542329, at *2 (E.D. Pa. June 30, 2020) ............ 12

*Antietam Battlefield KOA v. Hogan*,
  No. CV CCB-20-1130, 2020 WL 2556496, at *5 (D. Md. May 20, 2020) ........ 12

*Barry v. Lyon*,
  834 F.3d 706, 715 (6th Cir. 2016) ............................................................. 7

*Cty. of Butler v. Wolf*,
  No. 2:20-CV-677, 2020 WL 5510690 (W.D. Pa. Sept. 14, 2020) ................. 12

*City of Mesquite v. Aladdin's Castle, Inc.*,
  455 U.S. 283, 289, 102 S. Ct. 1070, 1074, 71 L. Ed. 2d 152 (1982) ............ 10

*Dark Storm Indus. LLC v. Cuomo*,
  No. 120CV0360LEKATB, 2020 WL 3833107, at *7 (N.D.N.Y. July 8, 2020) ... 12

*Elim Romanian Pentecostal Church v. Pritzker*,
  962 F.3d 341, 345 (7th Cir. 2020) ............................................................. 12

*Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*,
  551 U.S. 449, 462 (2007) ...................................................................... 6, 7

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167, 189, 120 S. Ct. 693, 708, 145 L. Ed. 2d 610 (2000) ............. 10

*League of Women Voters of Ohio v. Brunner*,
  548 F.3d 463, 473 (6th Cir. 2008) ............................................................ 10

*Spencer v. Kemna*,
  523 U.S. 1, 17, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) ............................... 7

*United States v. Concentrated Phosphate Export Assn.*,
  393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968) ........................... 10

*United States v. W.T. Grant Co.*,
  345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953) ............................. 10

## QUESTION PRESENTED

Does Executive Order 2020-183 which, effective October 9, 2020, rescinds Executive Order 2020-176 and expands the size limits on indoor and outdoor social gatherings and organized events affect Plaintiffs' pending motion for a preliminary injunction? If so, how?

## BRIEF ANSWER

No, the new order does not affect Plaintiff's pending Motion for Preliminary Injunction. Plaintiff EIF has an election challenger training event planned for October 8, 2020 which will likely run afoul of the restrictions in EO 2020-176. Because the expanded size limits for such an event under EO 2020-183 do not become effective until October 9, 2020, the event is prohibited by EO 2020-176 and exposes EIF and its members to criminal penalties. Therefore, a preliminary injunction remains necessary to protect Plaintiffs' First Amendment rights to hold that event.

Additionally, the Governor's decision to change her Orders a week before they face judicial scrutiny does not preclude review of the issues raised or otherwise render Plaintiffs' claims moot. Two separate doctrines justify the Court's examination of the merits of Plaintiffs' motion, both stemming from the reality that the Governor can alter, amend, rescind, or promulgate orders at any time. This unilateral ability of the Governor renders the issues involved in this case capable of repetition yet evading review since, as the Governor has done here, she can simply make a temporary change to a challenged Order in order to circumvent judicial scrutiny. Similarly, the voluntary cessation doctrine requires this Court to consider the merits of Plaintiffs' claims.

## INTRODUCTION

On Friday, September 25, 2020 – seven days before the hearing scheduled in this case – Governor Whitmer entered a new "Safe Start" Order. *See* EO 2020-183. Effective October 9, 2020, the 10-person indoor and 100-person outdoor restrictions ("10/100 restriction") of EO 2020-176 is now a 500-person indoor and 1,000-person outdoor restriction, depending on the size of the venue in which the event is held. EO 2020-183(6)(a)-(d).

Specifically, indoor events between 10-500 people are permitted so long as attendance is limited to 20% of fixed seating capacity or 20 people per 1,000 square feet if the venue lacks fixed seating. EO 2020-183(6)(b)(1)-(2)[1]. An event may be held indoors with 500 people, for example, if the venue has seating capacity for at least 2,500 people or if the venue is 25,000 square feet or larger. Indoor events in excess of 500 people are still prohibited regardless of venue size. EO 2020-183(6)(b). Outdoor events may be held with up to 1,000 people, provided that attendance does not exceed 30% of fixed seating capacity or 30 people per 1,000 square feet if the venue lacks fixed seating. EO 2020-183(6)(d)(1)-(2). Outdoor events in excess of 1,000 people are still prohibited regardless of venue size. EO 2020-183(6)(d).

Religious worship continues to be exempt from the capacity restrictions. EO 2020-183(14). Bars, restaurants, and nightclubs continue to be governed by different standards than social gatherings and planned events, permitting these industries to continue business operations at 50% capacity of normal seating. EO 2020-183(4); EO 2020-184(8). Theaters, cinemas, performance venues, arcades, bingo halls, bowling centers, indoor climbing facilities, trampoline parks and more may also reopen effective October 9th. EO 2020-183(3).

---

[1] The restrictions are slightly more relaxed in Regions 6 and 8, where events may be held at 25% seating capacity or a rate of 25 people per 1,000 square feet.

EO 2020-183(13) contains the same "Separation of Powers" clause as most of the Governor's previous orders, including EO 2020-176: "Nothing in this order should be taken to interfere with or infringe on the powers of the legislature and judicial branches to perform their constitutional duties or exercise their authority. Similarly, nothing in this order shall be taken to abridge protections guaranteed by the state or federal constitution under these emergency circumstances."

Perhaps significantly, however, the FAQ for EO 2020-183 no longer contains the guidance regarding this provision that was included in many of the prior orders.[2] The now omitted FAQ stated:

> Q: Does Executive Order 2020-___ prohibit persons from engaging in outdoor activities that are protected by the First Amendment to the United States Constitution?
>
> A: No. Persons may engage in expressive activities protected by the First Amendment within the State of Michigan, but must adhere to social distancing measures recommended by the Centers for Disease Control and Prevention, including remaining at least six feet from people from outside the person's household.

As discussed below, Plaintiff EIF plans to hold an event next week before the new Order goes into effect. That event will be subject to the 10/100 restrictions in EO 2020-176, restrictions which plainly violate the First Amendment. The Court should consider the merits of Plaintiffs' Motion for Preliminary Injunction in particular with regard to that event. Additionally, even if no such event was planned, Plaintiffs' claims are not rendered moot by the Governor's eleventh-hour decision to temporarily alter the challenged Orders. Despite the Governor's new order, the Court should consider Plaintiffs' Motion for Preliminary Injunction.

---

[2] See Executive Order 2020-183 FAQs, available online at https://www.michigan.gov/coronavirus/0,9753,7-406-98178_98455-540626--,00.html (omitting FAQ regarding exception for constitutionally protected outdoor activities)

3

## ANALYSIS

**I. Plaintiffs plan to hold additional events that were not included in their letters from over a month ago, including an election challenger training event on October 8, 2020, which remains prohibited by the Governor's prior order.**

Not all of the events Plaintiffs will conduct before the election were included in the letters sent out over a month ago and attached as exhibits to Plaintiffs' Complaint. At the time those letters were drafted, it was impossible for Plaintiffs to know each and every event they might plan or hold over the next several months. For example, EIF had made plans to hold an indoor event on Thursday, October 8, 2020, at 7:00 PM, hoping that by then, it would have received preliminary relief from this Court. *See* Ex. A, Declaration of Rhonda Winters, ¶¶6-9. If EIF receives preliminary relief, the event is planned to substantially exceed the limits under EO 2020-176. Ex. A, ¶9. That is because EIF needs more than 10 people to attend this and other events in order to reach and train a sufficient number of election challengers. Ex. A, ¶9. However, in order to avoid criminal penalties, EIF planned to limit this event to 10 and turn away members and trainees in the event a preliminary injunction was not granted before that date. Ex. A, ¶9.

Since this case was filed, despite the significant headwinds caused by the Governor's restrictions on in-person meetings, EIF has made its best effort to continue advancing the purposes for which it was founded, including by recruiting and training election challengers. Although it could have recruited more without the Governor's restrictions, EIF has recruited over 75 election challengers who share EIF's goal of preserving the purity and integrity of Michigan's elections. Ex. A, ¶¶3,5. An order on the preliminary injunction will not only allow EIF's October 8th event to go forward, it will also help EIF to finalize its program of later October events with the confidence that the Governor will not use her claimed authority to re-impose her 10-person limit, or more severe limits. Ex. A, ¶10.

4

At any rate, as applied to this October 8th event, EO 2020-183 has no effect whatsoever. Until the new order becomes effective on October 9, 2020, the 10/100 restrictions in EO 2020-176 continue to prohibit Plaintiffs from exercising their rights to speak and assemble under the First Amendment, including via the October 8, 2020 meeting. For this reason alone, the Court should consider the merits of Plaintiffs' claims despite the new order.

### II. Plaintiffs' claims are not rendered moot by the Governor temporarily changing the restrictions on social gatherings and planned events.

The new gathering restrictions in EO 2020-183 do not render Plaintiffs' claims moot. The Governor claims the ability to impose and enforce orders which prohibit and penalize speech and assembly based on the content of the expressive conduct associated with a particular event, and the threat that she will revert to her old restrictions necessarily affects EIF's plans for the rest of October. Ex. A, ¶10. Significantly, Governor Whitmer has not conceded that the 10/100 restriction is invalid or asserted that she will not reimpose it in the future. On the contrary, the Governor maintains the ability to make new orders and to change or rescind old ones at will. This unilateral authority to determine the law of the state of Michigan means that the Governor can strategically rescind and amend challenged orders to evade judicial review, as she has done here. She could revert back to the challenged restrictions at any time. The Court should examine the merits of Plaintiffs' claims, following the well-developed doctrines applied when a challenged action is capable of repetition yet evades judicial review or when such action is voluntarily terminated by an official who may revert to the challenged conduct at any time.

(a) **The Governor has claimed the authority to promulgate and enforce rules which prohibit some events based on the content of the expressive conduct involved under a statute which enables her to impose, rescind, and change her orders at any time.**

The Governor entered EOs 2020-160 and 2020-176, orders which criminalized certain speech and assembly in excess of defined in-person limits, including that which is political in

5

nature, while giving preferential treatment to other types of expressive conduct, including commercial and religious speech and assembly.[3] The Governor has ardently defended those orders as proper uses of the State's emergency police powers exercised via her unilateral decisions and actions. The new executive order does not change any of this: it is the opinion and legal position of the Governor that the 10/100 restrictions were and are permissible despite the severe burdens they impose on Michiganders' First Amendment rights. The new order does not concede the illegality of those restrictions, nor does it in any way prohibit her from imposing the same or similar restrictions in the future.

Since early March, when the Governor first declared a state of emergency related to COVID 19, she has entered over 180 executive orders, many of which altered, amended, rescinded, or adopted prior orders in whole or in part. Each of the orders at issue here – 2020-160, 2020-176, and 2020-183 – contain a "Future Orders" provision which expressly reserves the right of the Governor to "maintain, intensify, or relax the restrictions" in the orders as she sees fit. *See* 2020-160(16); 2020-176(17); 2020-183(17). Although 2020-183 changes the in-person restrictions, those changes may be, and likely are, temporary. The Governor could just as easily revert to the prior, more severe restrictions as soon as she thinks she has avoided this legal challenge.

> **(b) The Court should still consider Plaintiffs' claims because they are capable of repetition, yet would evade review due to the Governor's ability to alter her Orders just days before they face review by this Court.**

The Governor's ability to unilaterally alter her orders at a moment's notice place this case "comfortably within the established exception to mootness for disputes capable of repetition, yet evading review." *Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 462 (2007). "The exception applies where '(1) the challenged action is in its duration too short to be

---

[3] See Pl.'s Reply in Supp. of Mtn. for Prel. Inj, Section II(A), pp. 4-6, PageID. 543-545.

fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Id.* (citing *Spencer v. Kemna,* 523 U.S. 1, 17, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) (internal quotation marks and brackets omitted).

The Governor's orders in general and specifically in this case, both by their nature and due to the Governor's ability to change them at will and without notice, are too fleeting in duration to be fully litigated prior to the time they expire or are terminated by the Governor. Just since the beginning of this litigation, at least three separate executive orders—2020-160 (eff. 7/31/20), 2020-176 (eff. 9/4/2020), 2020-183 (eff. 10/9/20) — have placed restrictions on Plaintiffs' activities. Additionally, with just over a month before the election, if the Governor did implement more strict limitations or revert back to the 10/100 rule prior to November 3, it is unlikely that Plaintiffs would be able to fully litigate a challenge with sufficient speed to protect their rights.

"The second prong of the 'capable of repetition' exception requires a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party. Our cases find the same controversy sufficiently likely to recur when a party has a reasonable expectation that it 'will again be subjected to the alleged illegality,' or 'will be subject to the threat of prosecution' under the challenged law." *Fed. Election Comm'n*, 551 U.S. at 463 (internal quotation marks and citations omitted). "Recurrence of the issue need not be more probable than not; instead, the controversy must be capable of repetition." *Barry v. Lyon*, 834 F.3d 706, 715 (6th Cir. 2016) (citation omitted).

If no decision is reached on the merits of Plaintiffs' claims, Plaintiffs are likely to find themselves before the Court in the future when restrictions are tightened and the Governor's

7

prohibitions and threats of prosecution once again endanger Plaintiffs' Constitutional rights. The issues raised in this matter are not only *capable* of repetition, but it seems highly probable or at least reasonable that the same issues will arise once again within the coming weeks as EIF tries to plan its election and post-election-related activities. The Governor claims the infection rate dictates the severity of the restrictions imposed by her orders; that is, she claims a direct relationship between the rate of infection and the degree to which her orders restrict individual freedoms, particularly the rights to assemble and to engage in expressive conduct. Indeed, this was one of the Governor's bases for the 10/100 restrictions. *See* EO 2020-160 (citing a twofold increase in daily case rate for justifying increased restrictions, as well as alleged spread from parties and social gatherings).

The Governor has repeatedly stated, including within the past month, that Michigan is only in the early stages of dealing with the virus and she has predicted a "second wave" to which the state will have to respond in the coming months.[4] In fact, just two days ago, the Governor redeclared a state of emergency through October 27, 2020, citing, in part, increased case rates as a result of students going back to college and severe outbreaks in some counties. *See* EO 2020-186.[5] In a press release accompanying her new declaration, the Governor said: "This emergency

---

[4] Mauger, *Gov. Whitmer: Michigan in 'relatively early phases' with COVID-19*, The Detroit News, (Sept. 9, 2020, 12:11 PM), https://www.detroitnews.com/story/news/politics/2020/09/09/gov-whitmer-michigan-still-relatively-early-phases-covid-19/5757626002/ (citing Whitmer Q&A session in which she said "We're still, I hate to say it, in the relatively early phases…"); *Whitmer Says Michigan Is Prepared For Coming Resurgence Of COVID-19*, WWJ News, (Sept. 9, 2020, 4:32 PM), https://wwjnewsradio.radio.com/articles/news/whitmer-says-michigan-is-prepared-for-covid-19-resurgence (quoting Whitmer, ""If you've studied pandemics you know that there will be a second wave," Whitmer said. "The question is, how intense will it be? How long will it last for? We know the tools we need to keep ourselves safe and keep a second wave from overwhelming us.""); Pluta, *Whitmer Says She's Not Sure How Long COVID Emergency Will Last*, WKAR, (Sept. 9, 2020), https://www.wkar.org/post/whitmer-says-she-s-not-sure-how-long-covid-emergency-will-last#stream/0 (citing Whitmer as saying Michigan is "still in the relatively early phases" and that Michigan needs to be ready for a "second wave" of COVID-19).

[5] "As Michigan students have returned to in-person learning, schools and colleges have become the leading source of outbreaks in our state, surpassing nursing homes for the first time. Moreover, the number of counties experiencing severe outbreaks (in excess of 100 cases per million per day) appears to be on the rise, raising the possibility that hospital systems could become overwhelmed if such flareups are not quickly extinguished." EO 2020-186.

will end, and *it is a matter of months*. But we are not out of the woods yet."[6] Based on the Governor's own predictions, it can be reasonably inferred that the Governor could respond to this "second wave" in the coming weeks by re-imposing more restrictive orders which, once again, target assembly.

Therefore, the temporary and unilateral nature of the Governor's orders should strengthen rather than undermine the case for judicial review, particularly when it is reasonably likely that more restrictive gathering limits will be re-imposed in the coming weeks, once again calling Plaintiffs to the courts to protect their rights.

**(c) The Governor's voluntary and temporary alteration of the in-person restrictions does not render Plaintiffs' claims moot or preclude the Court from adjudicating those claims.**

A week before the hearing in which this Court was set to determine the legality of the 10/100 restrictions, the Governor voluntarily entered a new order which replaced those restrictions with more lenient ones, effective October 9th. However, this new order made clear that she might "maintain, intensify, or relax" the restrictions in the order at any time. EO 2020-183(17). It is even conceivable that she might impose the same 10/100 restrictions found in EOs 2020-160 and 2020-176 just as EIF is trying to complete final preparations for the election and what may be a long post-election canvass. The Governor's voluntary, and likely temporary, cessation of the challenged restrictions does not immunize her from judicial review. The Court should consider the merits of Plaintiffs' claims under the voluntary cessation doctrine.

"It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. Such abandonment is an important factor bearing on the question whether a court should exercise its power to enjoin

---

[6] Press Release, Office of Governor Gretchen Whitmer, Governor Whitmer Extends State of Emergency to Protect Michigan Families, Frontline Workers, and Small Businesses, <https://www.michigan.gov/whitmer/0,9309,7-387-90499_90640-540839--,00.html> (last visited Oct. 1, 2020).

the defendant from renewing the practice, but that is a matter relating to the exercise rather than the existence of judicial power." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, 102 S. Ct. 1070, 1074, 71 L. Ed. 2d 152 (1982). "[I]f it did, the courts would be compelled to leave '[t]he defendant…free to return to his old ways.'" *Id.* at 289, n. 10, 102 S.Ct. 1070 (citing *United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953)).

"In accordance with this principle, the standard [the Supreme Court] ha[s] announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: 'A case might become moot if subsequent events made it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189, 120 S. Ct. 693, 708, 145 L. Ed. 2d 610 (2000) (citing *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968)) (emphasis added). The "heavy burden of persua[ding]" the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness. *Id.; see also League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 473 (6th Cir. 2008) ("Voluntary conduct moots a case only in the rare instance where 'subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'").

If the Governor claims that her voluntary cessation of the challenged order by entering EO 2020-183 and changing the event restrictions renders this case moot, she carries the heavy burden of persuading the court that some aspect of the State's response to COVID-19 makes it *absolutely clear* that the 10/100 restrictions or more severe restrictions could not reasonably be expected to recur as part of the State's future mitigation efforts. This includes convincing the

court not only that she *will* not, but that she *cannot* revert back to her unlawful policies upon conclusion of this litigation.

As addressed above, the Governor claims the infection rate dictates the severity of the restrictions imposed by her orders; that is, she claims a direct relationship between the rate of infection and the degree to which her orders restrict individual freedoms, particularly the right to assemble and engaged in expressive group conduct. It can be reasonably inferred that if rates of infection increase in the future, the severity of the Governor's restrictions will likewise increase. Common sense suggests that if the Governor views the 10/100 restrictions as part of a successful mitigation strategy that permitted the looser restrictions in EO 2020-183, the 10/100 restriction would provide a framework for future orders if the case rate does increase in the coming weeks. If the Governor asserts that the new order renders Plaintiffs' case moot, she will fail to meet her burden as she cannot reasonably assure the Court that such a reversion will not and cannot occur in the future. This is particularly true given her statements that Michigan is still in the early stages of dealing with coronavirus, as well as her predictions that a "second wave" of the virus will hit Michigan, requiring additional restrictions in response.[7]

Because the Governor's voluntary, and likely temporary, alteration of the challenged 10/100 restrictions does not render Plaintiffs' claims moot, the Court should decide Plaintiff's Motion for Preliminary Injunction on the merits presented in the parties' briefs.

## CONCLUSION

Since the beginning of the COVID-19 pandemic, courts across the country have reviewed challenged executive orders that were subsequently altered or rescinded by a Governor where

---

[7] *See* Notes 4-6, above.

there remained a possibility that the challenged provision(s) could be reinstated at a later time.[8] This case is no different. "Courts have a duty to fully examine and address issues legitimately brought to them by the parties and failure to do so in the name of restraint may very well constitute a dereliction of duty." *Cty. of Butler*, 2020 WL 5510690, at *19 (citing *Citizens United v. FEC*, 558 U.S. 310, 329, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010) ("It is not judicial restraint to accept an unsound, narrow argument just so the Court can avoid another argument with broader implications. Indeed, a court would be remiss in performing its duties were it to accept an unsound principle merely to avoid the necessity of making a broader ruling.").

Plaintiffs respectfully request that the Court enter the requested injunctive relief.

Respectfully submitted this 1st day of October, 2020.

**GRAVES GARRETT, LLC**

*/s/ Edward D. Greim*
Edward D. Greim
Special Counsel, Thomas More Society
Missouri Bar No. 54034
GRAVES GARRETT, LLC
1100 Main Street, Suite 2700
Kansas City, Missouri 64105
Tel.: (816) 256-3181
Fax: (816) 222-0534
edgreim@gravesgarrett.com

*Attorney for Plaintiffs*

---

[8]  *See Cty. of Butler v. Wolf*, No. 2:20-CV-677, 2020 WL 5510690, at *19 (W.D. Pa. Sept. 14, 2020) ("Although that order is suspended in operation, it remains incorporated into the most recent mitigation orders issued by Defendants and can, at their will, be reinstated to full effect."); *Elim Romanian Pentecostal Church v. Pritzker*, 962 F.3d 341, 345 (7th Cir. 2020)(examining merits of plaintiffs' claims because it was "not 'absolutely clear' that the terms of [the challenged order] will never be restored."); *Acosta v. Wolf*, No. CV 20-2528, 2020 WL 3542329, at *2 (E.D. Pa. June 30, 2020) (rejecting defendant's mootness argument where "even though the executive emergency orders ceased on Saturday, June 5, there is still a 'reasonable expectation' the Governor could reinstate the executive emergency orders or issue similar restrictive measures before the November 2020 election."); *Dark Storm Indus. LLC v. Cuomo*, No. 120CV0360LEKATB, 2020 WL 3833107, at *7 (N.D.N.Y. July 8, 2020) (state could not carry burden under voluntary cessation analysis where there was reasonable expectation that similar restrictions may be imposed against in New York); *Antietam Battlefield KOA v. Hogan*, No. CV CCB-20-1130, 2020 WL 2556496, at *5 (D. Md. May 20, 2020) (rejecting mootness argument where executive order expressly states that it could return to challenged policy in the future).

12

## CERTIFICATE OF COMPLIANCE

Pursuant to LCivR 7.2(b)(ii), I, Edward D. Greim, certify that this brief contains 3,958 words exclusive of the case caption, cover sheets, any table of contents, any table of authorities, the signature block, attachments, exhibits, and affidavits as calculated by Microsoft Word 2019.

Respectfully submitted this 1st day of October, 2020.

        **GRAVES GARRETT, LLC**

        */s/ Edward D. Greim*
        Edward D. Greim
        Special Counsel, Thomas More Society
        Missouri Bar No. 54034
        GRAVES GARRETT, LLC
        1100 Main Street, Suite 2700
        Kansas City, Missouri 64105
        Tel.: (816) 256-3181
        Fax: (816) 222-0534
        edgreim@gravesgarrett.com

        *Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Edward D. Greim, certify that on October 1, 2020, a copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which sent notification to the following via e-mail:

Samantha Loree Reasner
Neil Anthony Giovanatti
Office of the Governor, State of Michigan
George W. Romney Building
111 S. Capitol Avenue
Lansing, MI 48909
(517) 241-0061
reasners@michigan.gov
giobanattin@michigan.gov


Respectfully submitted this 1st day of October, 2020.

**GRAVES GARRETT, LLC**

*/s/ Edward D. Greim*
Edward D. Greim
Special Counsel, Thomas More Society
Missouri Bar No. 54034
GRAVES GARRETT, LLC
1100 Main Street, Suite 2700
Kansas City, Missouri 64105
Tel.: (816) 256-3181
Fax: (816) 222-0534
edgreim@gravesgarrett.com

*Attorney for Plaintiffs*